# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| TONY LEE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:18-cv-01375-CLM-JHE |
| ) | |
| MATTHEW WADE, ERIC STARR, ) | |
| BRITTANY BROWN, and DALTON ) | |
| SUMMERS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

The magistrate judge filed a report that recommended this court dismiss Plaintiff Tony Lee Smith's complaint. (Doc. 70). Based on some new information, the court disagrees with part of the magistrate judge's rationale. But the court agrees with the result: Smith's complaint is due to be dismissed.

## SMITH'S OBJECTIONS & NEW INFORMATION

The report had two primary recommendations. First, the magistrate judge recommended that the court dismiss Defendant Summers under Rule 4(m) for insufficient service. Second, after construing Defendants' motion for summary judgment as a motion to dismiss, the magistrate judge recommended the court dismiss Smith's remaining claims without prejudice under 42 U.S.C. § 1997e(a) because Smith failed to exhaust his administrative remedies.

Smith objected to the report, focusing on the finding that he failed to exhaust his administrative remedies. (Doc. 74). Smith asserted that the magistrate judge did not require Defendants to submit the grievances he filed in October 2018 upon his return to the Calhoun County Jail, which would show he did exhaust his administrative remedies. (*Id*. at 5-7). So the magistrate judge ordered Defendants to supplement their Special Report with all requests, inquiries, grievances, and appeals entered by Smith on the Calhoun County Jail kiosk in October 2018 concerning the allegations in the amended complaint. (Doc. 75).

Defendants complied by supplying Smith's October 2018 kiosk submissions. (Doc. 76). Smith filed many grievances between October 12 and October 29, seven of which are relevant to the facts Smith alleged in his amended complaint.

1. On October 20, 2018, Smith submitted a general grievance in which he alleged he had suffered an "unprovoked attack" by inmates on April 16, 2018, after informing jail staff that he was in danger. (Doc. 76-1 at 39). Smith stated he requested that Defendant Brown place him in protective custody, but she refused to do so. (*Id*.). Smith noted Brown was "now a defendant in the U.S.D.C. (Smith v. Oden, et al)." (*Id*.). He claimed he was in fear for his safety because the same inmates who attacked him were still housed at the Jail. (*Id*.). He requested that jail staff place him in protective custody until he was returned to state custody. (*Id*.). It

2

appears jail staff did not respond to Smith's entry before he was returned to state custody on October 29, 2018. (*Id.*).

2. On the same day, Smith filed an inquiry with the chaplain. Smith also told the chaplain that inmates had attacked him on April 16, 2018, after notifying staff that he was in imminent danger. (Doc. 76-1 at 40). Smith explained that he had a pending "federal civil complaint against several employees for turning a blind eye to their Constitutional obligations to offer protection." (*Id.*). Smith requested to be placed in protective custody until his transfer to state custody because the same "gangmembers" who previously attacked him were still at the Jail. (*Id.*). The chaplain did not respond to Plaintiff's inquiry. (*Id.*).

3. The next day (October 21), Smith filed a second general grievance. In it, Smith requested to be placed in protective custody due to the April 16, 2018 assault. Smith also claimed that he had a case "presently pending in court." (Doc. 76-1 at 41). He stated that he was placing jail staff "on notice of the high likelihood of an assault." (*Id.*). Jail staff did not respond to Plaintiff's grievance before his transfer on October 29, 2018. (*Id.*).

4. One day later (October 22), Smith filed a second inquiry with the chaplain, again complaining that jail staff would not place him in protective custody. (Doc. 76-1 at 43). Smith explained that the same inmates who attacked him were still at the Jail. (*Id.*).

5. That same day (October 22), Smith filed an inquiry with Mental Health in which he stated that inmates attacked him on April 16, 2018, after he informed staff that he was in danger. (Doc. 76-1 at 44). Smith requested to be placed in protective custody pending his return to state custody. (*Id.*). Mental Health staff responded that Smith would need to speak with an officer about his request. (*Id.*). Smith stated he could not reach anyone and asked Mental Health staff to inform a supervisor of his previous grievance. (*Id.*).

6. The next day (October 23), Smith filed an inquiry with the Commissary in which he requested to be placed in protective custody due to "an unprovoked attack here on April 16th 2018." (Doc. 76-1 at 45). Smith said that he warned staff before the attack, but they "failed to take reasonable measures to prevent the incident." (*Id.*). Plaintiff noted that he had a "42 usca 1983 petition in the USDC." (*Id.*). Five days later, "J. Luker," a member of the jail staff, responded, "Ok." (*Id.*).

7. On the same day (October 23), Smith filed medical and mental health inquiries in which he requested to be placed in protective custody pending his transfer to state custody. (Doc. 76-1 at 46-47). Smith said that he was "just trying to prevent being assaulted again," (*id.* at 46), because the same inmates who assaulted him in April 2018 were still there and "freely communicate from block to block," (*id.* at 47). It does not appear that medical staff responded to Smith before he was transferred on October 29, 2018. (*Id.* at 46-47).

## ANALYSIS

The court now reviews the magistrate judge's report, considering Smith's objections and the resulting new evidence.

### A. April 2018 Assault & Conditions of Confinement

The magistrate judge found that Smith failed to exhaust his administrative remedies concerning the April 16, 2018 inmate assault, as well as his claims of unconstitutional conditions of confinement while he was on suicide watch from April 16 to May 4, 2018. (Doc. 70 at 17-23). Because Smith submitted them months later, the newly submitted October 2018 kiosk entries do not affect these claims nor the magistrate judge's reasoning—with which the court agrees.

A review of Smith's kiosk entries from March to June 2018 reveals that Smith did not file a grievance concerning the April 16, 2018 assault before he was transferred to state prison on or about June 6, 2018. (Doc. 60-1). Rather, it was not until Smith returned to the Calhoun County Jail in October 2018 that he filed general grievances concerning the April 2018 assault. (Doc. 76-1 at 39, 41).

But Smith filed this lawsuit on August 29, 2018, (Doc. 1), meaning that this case was pending when Smith filed his grievances in October 2018. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. 1997e(a). The Eleventh Circuit has interpreted the term "brought," as used in section 1997e(a), to mean "the filing or commencement of a lawsuit, not . . . its continuation." *See Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000). Thus, the Eleventh Circuit has held that an inmate must exhaust his administrative procedures "*before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added).

Smith did not exhaust his administrative remedies concerning the April 2018 assault *before* he filed this action in August 2018. None of Smith's kiosk entries show he filed grievances concerning his conditions of confinement while he was confined to suicide watch from April 16 to May 4, 2018. (Doc. 60-1; doc. 76-1). So the magistrate judge is right: Smith did not exhaust his administrative remedies regarding these claims before filing this action.

Neither do Smith's May 2018 kiosk entries alleging that the kiosk would not allow him to submit additional grievances undo the magistrate judge's recommendation that Smith failed to exhaust his claim that Defendants failed to protect him in April 2018 or subjected him to unconstitutional conditions of confinement from April to May 2018. The defendants have submitted well over 30 grievances, requests, or inquiries Smith filed between May 4, 2018 and June 5, 2018. (Doc. 60-1 at 34-72). Although Smith may not have been able to submit his complaints under certain categories due to excess filings, (doc. 60-1 at 65, 68), he

6

was able to submit complaints during this time. Defendant Starr acknowledged in his affidavit that the kiosk, in some cases, prevents an inmate from submitting multiple entries under a single category to prevent inmates from "spamming the system with duplicative requests."[1] (Doc. 89-1, Starr Decl. ¶ 17). But Starr noted that if there is an issue with a category not allowing submissions, inmates may still communicate with jail staff simply by submitting an entry under another category. (*Id*.). Starr maintained that the categories within the kiosk are not restrictive and are "merely designed to aid in quickly assigning the entry to the correct person at the Jail." (*Id*.).

For these reasons, Smith was not prohibited from filing grievances on the jail kiosk. So the court agrees that Smith's claims against Defendants concerning the April 2018 assault and his conditions of confinement while on suicide watch in April and May 2018 warrant dismissal for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).[2]

---

[1] Smith's kiosk submissions during his most recent confinement at Calhoun County Jail demonstrates the need for this feature. (Doc. 89-2 at 2-35). Over a three week period, Smith submitted five inquiries under the "Work Release" category. (*Id*. at 19, 21, 26, 32, 34). While Smith initially made a legitimate request to be considered for work release, he then began filing inquiries for a job "with absolutely no supervision requiring one to be far away from this facility"; promising to "work like 10 Mexicans come Monday"; advising staff that his driver's license was revoked but he could "drive pretty good without" one; stating he was "a work-machine just like James Brown was a Love Machine"; and offering to show jail officials he was "being a good boy."

[2] Smith complains in his objections that he could not properly exhaust his administrative remedies because he could not "sign" his grievances using the jail kiosk. (Doc. 74 at 1-4). But Defendants do not argue that Smith failed to sign his grievances. Instead, Defendants alleged in their Special Report – incorrectly – that Smith did not file any grievance concerning the allegations in his amended complaint. (Doc. 25 at 9, 13).

**B.     October 2018 Incarceration**

1. <u>Failure to Exhaust</u>: The court reaches the opposite result on Smith's failure to exhaust remedies related to the alleged October 2018 fights.  A review of the new evidence shows that Smith did submit general grievances to jail staff in October 2018, in which he requested to be placed in protective custody due to the April 2018 assault and his fear that it might happen again.  (Doc. 76-1 at 39-41, 43-47).  And, once, a member of jail staff responded, "Ok."  (Doc. 76-1 at 45).

The United States Supreme Court explained that an inmate "must exhaust available remedies but need not exhaust unavailable ones."  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).  The Court noted three circumstances in which administrative remedies are unavailable:  (1) when the administrative procedure "operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when an administrative procedure is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*. at 1859-60.

Although the Eleventh Circuit has not ruled on this specific issue, other circuits have found that an inmate meets the PLRA exhaustion requirement if officials fail to timely respond to the inmate's grievance.  *See Bryant v. Rich*, 530 F.3d 1368, 1373, n.6 (11th Cir. 2008) (noting that other courts have found

administrative remedies "unavailable" when prison officials do not respond to grievances or if they prevent the filing of grievances); *Whitington v. Ortiz*, 472 F.3d 804, 807-08 (10th Cir. 2007) ("[W]hen prison officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA"); *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 234 (6th Cir. 2006) (holding "the exhaustion requirement is satisfied where prison officials fail to timely respond to an inmate's written grievance") (quotation marks and citations omitted); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (refusing to permit prison officials "to exploit the exhaustion requirement through indefinite delay in responding to grievances") (quotation marks and citation omitted).

Defendants argue in their supplemental brief that jail staff answered Smith's requests for protective custody by responding, "Ok," on October 28, 2018, and if Smith was unsatisfied with this response, he could have appealed. (Doc. 76-1 at 45; doc. 89 at 4, 5). But it is unclear whether Smith should have known to appeal at this point. Indeed, this one-word response could have meant that jail staff would grant Smith's request to be placed in protective custody. Or it could have meant jail staff had considered Smith's request for protective custody but did not plan to do anything about it. Or it could simply mean, "we read it." Defendants shed no light on how this response should have been interpreted. (Doc. 89). So the court finds that jail

9

staff merely responding, "Ok," could not alert Smith that his request was being denied so that he knew to appeal.

Defendants' contention that Smith could have appealed the jail staff's lack of responses to his other October 2018 kiosk entries is also unavailing. While Defendants maintain that such an appeal would have been allowed, they acknowledge there is "no official process to appeal a non-response in the kiosk system to the Sheriff," and that inmates generally do not receive instruction on this matter. (Doc. 89 at 7; Doc. 89-1 at 7, Starr. Decl. ¶ 20).

Because jail staff failed to sufficiently respond to Smith's general grievances in which he requested to be placed in protective custody in October 2018 – thus making Smith unaware of his need to appeal – Defendants have failed to carry their burden of showing that Smith did not exhaust his administrative remedies before filing his amended complaint. So Defendants' motion to dismiss Plaintiff's October 2018 failure to protect claims for failure to exhaust administrative remedies is due to be denied.

2. Summary Judgment on the merits: That said, Defendants are entitled to summary judgment on these claims. The Eighth Amendment's prohibition on cruel and unusual punishment imposes on institutional officers the duty to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quotation marks and citations omitted). It

is clear, however, that not every injury suffered by an inmate at the hands of another inmate "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Farmer*, 511 U.S. at 834; *see Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). "'In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981)).[3] It is when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious" harm that a constitutional violation occurs. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

11

official's failure to alleviate a significant risk that he should have perceived but did not," cannot establish liability on the part of the official. *Id*. at 838. Also, the known risk of injury must be a "'strong likelihood, rather than a mere possibility.'" *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989).

Once it is established that an institutional official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835. Finally, Plaintiff must produce sufficient evidence that Defendants' deliberate indifference to a known danger or risk caused Plaintiff's constitutional injury. *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

The record is devoid of evidence that Defendants were aware of a credible threat to Smith, or a strong likelihood that Smith would be harmed, during Smith's brief stint at the Jail in October 2018. *Edwards*, 867 F.2d at 1276. Neither Smith's amended complaint nor his kiosk grievances show that Smith personally informed Defendants of a "particularized threat or fear" of harm from other inmates. *Carter v. Galloway*, 352 F.3d 1346, 1349-50 (11th Cir. 2003). For instance, Smith claims

12

he was involved in two fights with gang members and that gang members threatened him with "homemade knives." (Doc. 15 at 13). But Smith does not allege he personally informed Defendants of these incidents—or even when these incidents occurred. (*Id.*). Nor do the newly discovered kiosk entries mention these incidents. (Doc. 76-1).

Smith's kiosk entries, at best, conveyed only a vague and generalized threat of harm during his October 2018 incarceration. While Smith claimed that the same inmates who assaulted him in April 2018 were still housed at the Jail, he did not allege in his grievances that he was being housed in the same area as these individuals or that he was otherwise in close contact with them. (Doc. 76-1 at 39-41, 43-47). Nor does he allege that the same persons who assaulted him in April 2018 were the one who fought him in October 2018. (Doc. 76-1 at 39-41, 43-47).

Officers must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury. *See Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) ("The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.") (quotation marks and citation omitted). Smith "convey[ed] nothing about the nature of the anticipated risk" and his generalized fear of harm is too vague and unspecific to rise to the level of a substantial risk from

which Defendants could infer a strong likelihood of injury, not just a mere possibility. *Id*. at 1237.

Smith seeks to show Defendants were aware of a substantial risk of harm to him based on a history of violence at the Jail. Specifically, he alleges that "[t]here are an average [of] five to seven violent attacks per week in the Calhoun County Jail at the hands of violent street gangs." (Doc. 15 at 12). While occasional or isolated attacks by one inmate on another do not constitute cruel and unusual punishment, confinement in a prison "where violence and terror reign" is actionable. *Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (explaining that a prisoner has an Eighth Amendment right to be reasonably protected from "constant threat of violence" by his fellow inmates) (citation omitted). To establish deliberate indifference based on a generalized risk, a plaintiff must show "that serious inmate-on-inmate violence was the norm or something close to it." *Id.* at 1322.

Smith's statement does not show that serious inmate-on-inmate violence was so pervasive at Calhoun County Jail that it constituted a substantial risk of serious harm to which Defendants were deliberately indifferent. *See Purcell*, 400 F.3d at 1323 ("In the jail setting, a risk of harm to some degree always exists by the nature of its being a jail."). Smith does not allege he personally witnessed these inmate assaults. Nor is there any evidence in the record of the total jail population or the

14

sections of the Jail in which these assaults occurred that would place Smith's statement in context. Neither is it clear from the record over what time period these incidents occurred. *See Harrison v. Culliver*, 746 F.3d 1288, 1299-300 (11th Cir. 2014) (holding that four assaults over a three-year period in an institution housing between 830 and 990 inmates was "hardly sufficient to demonstrate that [the institution] was a prison 'where violence and terror reign.'" (quoting *Purcell*, 400 F.3d at 1320)).

Along with evaluating the number of inmate-on-inmate assaults against the number of inmates housed at the facility, the Eleventh Circuit has also noted that, when it held that a generalized risk of violence could support a claim of deliberate indifference to a substantial risk of serious harm, "a plaintiff has pointed to specific features of a facility or its population rendering it particularly violent." *Marbury*, 936 F.3d at 1235. This includes evidence of "pervasive staffing and logistical issues rendering prison officials unable to address near-constant violence, tensions between different subsets of a prison population, and unique risks posed by individual prisoners or groups of prisoners due to characteristics like mental illness." *Id.* Smith has not made such a showing here. So Defendants' motion for summary judgment on Plaintiff's failure to protect claims, (doc. 45), is due to be granted and the claims are due to be dismissed with prejudice.

### C. Defendant Summers

Smith objects to the magistrate judge's recommendation that the court dismiss Defendant Summers for insufficient service under Fed. R. Civ. P. 4(m). (Doc. 74 at 7-8). Smith argues that Defendant Wade, as Sheriff, is "responsible" for Summers' conduct. (*Id*. at 7). But "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Defendants provided the court with Summers's last known address, and the court and the U.S. Marshals Service have attempted service on Summers without success. (Doc. 23 at 2; Doc. 26; Doc. 73). So Defendant Summers is due to be dismissed without prejudice for insufficient service pursuant to Fed. R. Civ. P. 4(m).

### D. Pending Motions

Smith has moved for production of surveillance video of Calhoun County Jail's detox/isolation area to support his claim of unconstitutional conditions of confinement while assigned to the area from April to May 2018. (Doc. 84 at 1-3). Because Smith's conditions of confinement claim is subject to dismissal for Plaintiff's failure to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a), his request for discovery is **DENIED**.

Smith also moves to further amend his complaint to name as defendants Lieutenant Chames, Lieutenant Luker, and Officer Abernathy. (Doc. 85 at 1-3).

Plaintiff claims these jail officials failed to respond to his October 2018 grievances in which he requested to be placed in protective custody. (*Id.*). But an inmate does not have a constitutionally protected liberty interest in a jail's grievance procedure. *See Bingham v. Thomas*, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (holding that a prison grievance procedure does not provide an inmate with a constitutionally protected interest); *Allen v. St. John*, 827 F. App'x 1002, 1006 (11th Cir. 2020) (finding that the district court correctly dismissed plaintiff's claims that he submitted multiple grievances to sheriff but never received a response). And the record demonstrates that Smith conveyed through his grievances only a vague and generalized threat of harm during his October 2018 incarceration, which is insufficient to show that jail officials were aware of a strong likelihood of injury to him. *See Marbury v. Warden*, 936 F.3d 1227, 1236, 1237 (11th Cir. 2019). So allowing Smith to name these individuals as defendants based solely on his October 2018 grievances would be futile. So Plaintiff's motion to further amend his complaint is **DENIED**.

## CONCLUSION

Having reviewed and considered de novo all the materials in the court file, including the report and recommendation and Smith's objections, the court **ADOPTS** and **ACCEPTS** the report and recommendation in part, and **REJECTS** it in part.

First, the court finds Defendant Summers is due to be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) for insufficient service and Defendants' motion to dismiss Summers is due to be denied as moot. Second, the court finds Plaintiff's claims concerning the April 2018 inmate assault and his conditions of confinement on suicide watch from April to May 2018 are due to be dismissed for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).[4]

After consideration of Defendants' Second Supplemental Special Report and brief, (docs. 76, 89), the court finds that Smith exhausted his administrative remedies under 42 U.S.C. § 1997e(a) regarding his October 2018 failure to protect claims. (Doc. 76-1). So the court **REJECTS** the magistrate judge's recommendation that the court grant Defendants' motion to dismiss those claims pursuant to § 1997e(a). But Defendants' motion for summary judgment on Plaintiff's October 2018 failure

---

[4] Although Defendant Summers has not been served with the amended complaint, or otherwise responded to this action, any claim against him concerning the April 2018 inmate assault and Smith's conditions of confinement on suicide watch would also be subject to dismissal under 42 U.S.C. § 1997e(a).

to protect claims is due to be granted because the court finds that no genuine issues of material fact exist.

A Final Judgment will be entered separately.

**DONE** and **ORDERED** this the 30th of November, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE